

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00037-CV

_____

IN THE INTEREST OF R.M.T., A CHILD

On Appeal from the 307th Judicial District Court
Gregg County, Texas
Trial Court No. 2009-2288-DR

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley
Concurring Opinion by Justice Carter

OPINION

The parental rights existing between John and Melissa with their child, R.M.T.,[1] were terminated following a bench trial in which the trial court made findings that the evidence supported by clear and convincing evidence requisite supported statutory reasons for the termination. Melissa has filed no appeal, but John has done so.

On appeal, John makes no challenge to the sufficiency of the evidence to support termination of his parental rights. Rather, John's appeal is centered on his own mental status at the time of trial, alleging that he was not mentally competent at that time. He maintains that the trial court erred by refusing to grant a continuance while he was in the state of mind he then possessed and in proceeding with the trial at a time when John was unable to understand the allegations upon which the State's case rested or to effectively assist counsel in his defense. He also complains that the trial court was in error when John, although plainly not then in a mental state to understand or comprehend the proceedings, was permitted (against the advice of his attorney ad litem) to testify.

The record indicates that John had been charged with assault family violence (enhanced) at some point prior to these termination proceedings. In connection with that criminal case, the trial court had ordered John to undergo a competency evaluation. As a result of the ensuing

---

[1]For purposes of confidentiality, the parents are referred to only by their first names, and the child is identified only by initials. *See* TEX. R. APP. P. 9.8.

2

competency evaluation, John was determined to be incompetent to stand trial in his criminal case.[2]

It is undisputed that at the time of the termination of parental rights trial on February 28, 2011,

John remained incompetent to stand trial.[3]

Three days before trial, John filed his verified motion for continuance, alleging his

incompetence as the reason for the requested continuance. Attached to the motion were eight

exhibits, each of which were in support of the claim that John was not competent to stand trial on

the date scheduled for trial, February 28, 2011.[4] The trial court denied the motion for

---

[2]The competency evaluation was performed by Dr. Thomas Allen on February 23, 2010, concluding John was unable to rationally or factually discuss his case with his attorney, could not rationally communicate with his attorney, and could not discuss his legal situation. On March 4, 2010, the trial court presiding over a criminal case pending against John (Gregg County cause number 38,590-A) found John incompetent to stand trial. John was committed to a mental health facility for a period not to exceed 120 days, with the specific objective of attaining competency to stand trial. John was subsequently interviewed September 29, 2010, by Gary Holly, M.Ed., LPC, who formed the opinion that John remained incompetent to stand trial.

[3]On October 8, 2010, John was evaluated by Joseph L. Black, M.D., at North Texas State Hospital who concluded that John suffered from schizoaffective disorder, polysubstance dependence, cognitive disorder, and personality disorder with paranoid and antisocial traits. The report states that John "has been unable to achieve competency to stand trial during this hospitalization" and that in the physician's opinion, "the patient's condition . . . is expected to continue for more than 90 days." A civil commitment hearing was held on October 28, which resulted in John's civil commitment for "not longer than 12 months." On December 20, 2010, it was determined that John was not manifestly dangerous, and he was transferred to Rusk State Hospital. On February 16, 2011, both John's attorney and his guardian ad litem visited him at Rusk State Hospital. John's guardian ad litem averred in an affidavit that "I seriously doubt if my Client has the capacity to understand the nature and objective of the proceedings against him and to consult with his Court appointed attorney ad litem in preparing a defense to the allegations made by the Department." John's counsel averred in his affidavit that John was unable to communicate with him, answer questions relevant to the suit, provide any facts to rebut allegations made by the Department, and was unable to assist in establishing a tactical goal for the termination case. The Department concedes that John was incompetent to testify at trial.

[4]The referenced exhibits consist of the reports discussed in the previous footnotes, as well as the affidavits of John's guardian ad litem and of his trial counsel. The definition of "competency" as discussed in the various reports is taken from the Texas Code of Criminal Procedure:

3

continuance, and the case proceeded to trial as scheduled. John was permitted to testify at trial over his attorney's objection that he was not competent to do so.

## I.    Issues Presented

On appeal, John claims (1) the trial court erred in denying his motion for continuance, (2) the trial court erred in proceeding to trial when John was incompetent because to do so violated John's procedural due process rights under the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the Texas Constitution, and (3) the trial court erred when it permitted John to testify over counsel's Rule 601 objection that he was not competent to testify. *See* TEX. R. EVID. 601.

We affirm the judgment of the trial court.

## II.    Analysis

### A.    Did the Trial Court Err in Proceeding to Trial in Light of John's Incompetence?

John claims that his procedural due process rights under the United States and Texas Constitutions were violated when the trial court refused to continue the trial due to John's alleged

---

(a)    A person is incompetent to stand trial if the person does not have:

(1)    sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or

(2)    a rational as well as factual understanding of the proceedings against the person.

(b)    A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence.

TEX. CODE CRIM. PROC. ANN. art. 46B.003 (West 2006).

incompetence. As a result, the termination proceeding took place while John was incompetent to proceed with trial.[5]

### (1)    Constitutionally Protected Interest

The Fourteenth Amendment to the United States Constitution protects against deprivation of life, liberty, or property by the State "without due process of law." U.S. CONST. amend. XIV; *Daniels v. Williams*, 474 U.S. 327, 331 (1986). The Texas Constitution provides that "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. The Texas "due course" and federal "due process" provisions have been interpreted to be "without meaningful distinction." *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). Therefore, in matters of procedural due process, Texas courts have traditionally followed contemporary federal due process interpretations of procedural due process issues. *See id.*

Procedural due process guarantees the right to a fair procedure. John maintains that he was denied fair procedure due to his alleged incompetence at the time of trial. Therefore, we must determine whether John has a liberty or property interest that is entitled to procedural due process protection, and if he does, what process is due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).

---

[5]John's first point of error technically complains of the trial court's refusal to grant his motion for continuance; his second point of error complains that the trial took place at a time when he was incompetent. Both points of error allege John was deprived of his procedural due process rights under the United States and Texas Constitutions. Because these points of error largely overlap, we address both together.

5

The United States Supreme Court has stated that a liberty interest under the Fourteenth Amendment

> denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, *establish a home and bring up children*, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). "[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). A state's attempt to terminate the parent-child relationship is governed by the Fourteenth Amendment. *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982). Moreover, the Texas Supreme Court has recognized that the involuntary termination of parental rights implicates fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). In light of this weighty precedent, there can be no doubt that John's right to retain custody of R.M.T. is a constitutionally protected liberty interest and must be afforded procedural due process. *See Martinez v. Tex. Dep't of Protective & Regulatory Servs.*, 116 S.W.3d 266 (Tex. App.—El Paso 2003, pet. denied); *In re G.C.*, 66 S.W.3d 517, 525 (Tex. App.—Fort Worth 2002, no pet.).

6

### (2)    *Eldridge* **Balance**

The question then becomes one of what process is "due" before the attempted deprivation of parental rights as here. At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319 (1976). However, what process is due in any given situation is measured by a flexible standard that depends on the practical requirements of the circumstances. *Id.* at 334; *Than*, 901 S.W.2d at 930. "When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." *Santosky*, 455 U.S. at 753–54. "[T]he process due in parental rights termination proceedings turns on a balancing of the 'three distinct factors' specified in *Mathews*. . . ." *Id.* at 754; *In re S.K.A.*, 236 S.W.3d 875, 892 (Tex. App.—Texarkana 2007, pet. denied).

In conducting our due process analysis, we are cognizant of the fact that there is no Texas authority which would permit a trial court to halt termination proceedings due to the incompetency of the parent. *In re E.L.T.*, 93 S.W.3d 372, 375, 377 (Tex. App.—Houston [14th Dist.] 2002, no pet.). In *E.L.T*, the court was confronted with the issue of whether an allegedly incompetent mother was entitled to a competency hearing prior to a proceeding on the merits to terminate her parental rights.[6] At the time of trial, counsel for the mother requested a competency evaluation and a continuance because the mother repeatedly asked, "What are we doing here?" The court

---

[6]Here, John does not complain of not having received a competency hearing; rather, he complains of being forced to trial while incompetent.

ruled that the denial of the motion for continuance was not an abuse of discretion because the motion was not in writing and was unverified. *Id.* at 375; *see* TEX. R. CIV. P. 251.

Counsel for the appealing parent in *E.L.T* further argued that because a termination proceeding is quasi-criminal, the trial should have been continued because the mother was mentally incompetent. The court summarily dismissed this argument because there was no written or oral request for the court to make such a competency finding and because there is no authority in which a family court proceeding can be halted due to a parent's incompetency. *E.L.T.*, 93 S.W.3d at 375. "The relevant sections of the Texas Family Code do not prescribe a competency standard that a parent must meet before participating in a hearing or trial." *Id.*; *see generally* TEX. FAM. CODE ANN. §§ 161.001–.210 (West 2008). "To the contrary, a parent's mental illness may serve as a basis for involuntary termination of parental rights." *E.L.T.*, 93 S.W.3d at 375; TEX. FAM. CODE ANN. § 161.003. Various procedural safeguards, such as the appointment of a guardian or other legal representative of the allegedly incompetent mother were not employed. The record, held the court, did not reflect an abuse of discretion in proceeding with the trial. *E.L.T.*, 93 S.W.3d at 377.

*E.L.T.* is factually distinguishable from this case in several respects. In *E.L.T.*, the only motion for continuance was oral, not complying with Rule 251 of the Texas Rules of Civil Procedure, the parent was appointed no guardian ad litem or attorney ad litem, and there was no finding by any court that the parent was incompetent and there was no evidence introduced to

support a claim that she was not competent. John's case here is stronger because a sworn written motion was filed (which included affidavits concerning his competence), John was represented by a guardian ad litem and attorney ad litem, and another court had previously fairly recently found John to be incompetent (as that term is defined in the Texas Code of Criminal Procedure) to stand trial in his criminal case, and his incompetency persisted at the time of the parental rights termination proceeding;[7] in *E.L.T*, there was no guardian ad litem appointed for the parent whose rights were terminated *E.L.T.*, 93 S.W.3d at 376. Due to the distinctions between these two cases, we do not believe *E.L.T*. offers concrete precedence.

In his analysis of the *Eldridge* factors, as they apply here, John relies largely on Justice Guzman's concurrence in *E.L.T.*[8] John argues that because a parental rights termination proceeding is a quasi-criminal proceeding, procedural due process requires (as in criminal cases), that he not be subjected to trial until such time as he is competent to do so.

---

[7]The affidavit evidence in support of John's incompetency was not contested. At trial, the court commented that it was inclined

> to make a finding based upon not only the reports that were filed with the motion for continuance in this case that we heard last week, but also based on the Court's own observation of [John] throughout the course of this trial, he's not going to be able to testify.

The trial court further indicated that it did not believe John would comprehend the process of being sworn in to testify. Later, the trial court stated, "I want the record to reflect that the witness was unable to follow the instruction to keep his hand held up. He indicates he understands the oath that he's taken, although the Court doubts that to be the case."

[8]Justice Guzman concurred in the result, but wrote separately to address what she perceived to be "the failure of Texas law to adequately address parental competency in the context of termination of parental rights." *E.L.T.*, 93 S.W.3d at 377 (Guzman, J., concurring).

9

It is true that various courts have recognized termination proceedings to be quasi-criminal in nature.  As explained by Justice Guzman,

> Notwithstanding the traditional classification of termination proceedings as civil in nature, some courts have recognized that in certain contexts such suits are quasi-criminal.  *In re B.L.D.*, 56 S.W.3d 203, 211–12 (Tex. App.—Waco 2001, pet. filed) (noting that statutory right to counsel in termination proceedings includes a due process right that counsel be effective); *In re J.M.S.*, 43 S.W.3d 60, 63 n.1 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (arguing by analogy in termination case that certain other family law proceedings are quasi-criminal in nature); *In the Matter of the Marriage of Hill*, 893 S.W.2d 753, 755–56 (Tex. App.—Amarillo 1995, writ denied) (likening the procedural issues in parental termination cases to those of criminal cases as both implicate constitutional concerns); *see also Edwards v. Texas Dep't of Protective and Regulatory Servs.*, 946 S.W.2d 130, 135 (Tex. App.—El Paso 1997, no writ) (quoting approvingly of *Hill*). . . .

*E.L.T.*, 93 S.W.2d at 377 (Guzman, J., concurring).  Further,

> [s]et apart from "mine run civil actions," termination proceedings work a "unique kind of deprivation."  *M.L.B. v. S.L.J.*, 519 U.S. 102, 127–28, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996); *Santosky*, 455 U.S. at 762, 102 S.Ct. 1388 (noting that the challenged state-initiated neglect proceeding bore "many indicia of a criminal trial").  Indeed, the removal of a child from the care of his parents is "a penalty as great, if not greater, than a criminal penalty."  *Lassiter v. Dep't of Soc. Servs. of Durham County*, 452 U.S. 18, 39 n. 5, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (Blackmun, J., dissenting) (citations omitted).  Texas commentators have gone so far as to call termination "the capital punishment of civil law."  SAMPSON & TINDALL, TEXAS FAMILY CODE ANNOTATED § 161, Introductory Comment p. 757 (2001).  Such a characterization rings true considering that termination proceedings involve "the awesome authority of the State to destroy permanently all legal recognition of the parental relationship."  *M.L.B.*, 519 U.S. at 128, 117 S.Ct. 555.

*Id.* at 378 (Guzman, J., concurring).  We do not believe, however, that classification of a termination proceeding as quasi-criminal can (or should) be a sole factor which is outcome

10

determinative in resolving the question of whether John's termination of parental rights proceeding should have been continued until such time as he regained competency. Rather, we look to and weigh the *Eldridge* factors to determine if the termination proceeding in this case afforded John the measure of procedural due process to which he was entitled—that is, whether he received a fair hearing.

"In conducting an *Eldridge* due process analysis, we weigh three factors -- the private interests at stake, the government's interest in the proceeding, and the risk of erroneous deprivation of parental rights -- and balance the net result against the presumption that our procedural rule comports with constitutional due process requirements." *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003) (footnotes omitted).

Under the first prong of the *Eldridge* balancing test, we are to evaluate the private interests affected by the termination proceeding. "In parental rights termination proceedings, the private interest affected is commanding." *Santosky*, 455 U.S. at 758. The interest of a parent in such a proceeding has been declared to be "plain beyond the need for multiple citation" and a natural parent's "desire for and right to 'the companionship, care, custody and management of his or her children'" is an interest far more precious than any property right. *Lassiter v. Dep't of Soc. Servs. of Durham County N. Carolina*, 452 U.S. 18, 27 (1981) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). The required standard of review in termination proceedings (strict scrutiny) and the high burden of proof (clear and convincing evidence) point to the enormity of the liberty interest at

11

stake. *E.L.T.*, 93 S.W.3d at 379. John's liberty interest in the parent-child relationship is of fundamental significance under the first prong of the *Eldridge* balancing test and weighs heavily in favor of strong procedural protections.

The State correctly recognizes, however, that while the constitutional underpinnings of the parent-child relationship are of fundamental significance, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). It is also essential that the child's emotional and physical interests not be sacrificed in order to preserve the parent-child relationship. *Id.* The State maintains that the child's interests are necessarily involved and must be considered in weighing the private interest at stake in accord with *Eldridge*. *M.S.*, 115 S.W.3d at 547–48; *In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002). Indeed, the

> Family Code's entire statutory scheme for protecting children's welfare focuses on the child's best interest. *See*, *e.g.*, TEX. FAM. CODE §§ 51.11(b); 153.001; 153.002; 161.001(2); 161.101. And, like their parents, children have an interest in an accurate resolution and just decision in termination cases. But children also have a strong interest in a final decision on termination so that adoption to a stable home or return to the parents is not unduly prolonged. In fact, it is this State's express policy to provide a safe, stable, and nonviolent environment for the child. TEX. FAM. CODE § 153.001(a)(2). And, if error is properly preserved, the Legislature has upheld this interest by requiring prompt appellate decisions: "An appeal in a suit in which termination of the parent-child relationship is in issue shall be given precedence over other civil cases and shall be accelerated by the appellate courts." TEX. FAM. CODE § 109.002(a).

*J.F.C.*, 96 S.W.3d at 304 (Schneider, J., dissenting); *see also Lassiter*, 452 U.S. at 32 ("[C]hild-custody litigation must be concluded as rapidly as is consistent with fairness. . . .").

Here, a situation is presented whereby the trial court could not accommodate R.M.T.'s interest in achieving permanency without proceeding to trial while John was incompetent. Because the trial court was acting in accord with a legislatively-mandated time frame[9] requiring that the case either be tried or dismissed, it was faced with the prospect of either dismissing the case by April 30, 2011 (the final deadline to try or dismiss the action), or proceeding on to trial, even though it apparently believed that John was incompetent. John argues that the trial court should, at the least, have postponed the trial until April 30, 2011, the absolute deadline for the case to be tried or dismissed, in order to afford him additional time to regain competency.

Despite John's request for a continuance in which he argued there was time to regain competency prior to the "drop dead date" of April 30, 2011, there is no evidence to indicate any likelihood or probability that John would regain competence by this time, if ever.[10] Under this

---

[9]Section 263.401of the Texas Family Code provides,

> [O]n the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child.

TEX. FAM. CODE ANN. § 263.401(a) (West 2008). Subsection (b) allows for one extension not to exceed 180 days, if the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and such continuing appointment is in the best interest of the child. TEX. FAM. CODE ANN. § 263.401(b) (West 2008). The trial date in this case was set after a 180-day extension was granted.

[10]John was found incompetent to stand trial in his criminal case on March 4, 2010. On September 29, 2010, Dr. Stacey Shipley, a licensed psychologist, reported that John remained incompetent to stand trial. In her report, Shipley concluded that "Restoration of [John's] trial competency is very unlikely in the near future." In October 2010, John's records from North Texas State Hospital indicate that he "has been unable to achieve competency to stand trial during this hospitalization" and that incompetency was expected to continue for more than ninety days.

scenario, the trial court could not protect the child's interest in achieving permanency in a timely fashion and accommodate John's request that the case not proceed to trial while incompetent.[11] Accordingly, the private interests of John and of R.M.T. under the first *Eldridge* factor "reflect a desire for an accurate and just decision, but one that does not unduly prolong a final decision about the child's permanent home." *J.F.C.*, 96 S.W.3d at 304. In other words, the interests of the child appeared to be in direct conflict with the interests of the parent. In such a head-to-head conflict, one person's interest must trump the other; here, the interest of the child is the trump card.

The State's interest in the proceeding includes protecting the best interest of the child, an interest which is "served by procedures that promote an accurate determination of whether the natural parents can and will provide a normal home." *M.S.*, 115 S.W.3d at 548–49 (quoting *Santosky*, 455 U.S. at 767); *see also In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003) (the State "*parens patriae* interest in promoting the welfare of the child" aligns with the parent's interest in a just and accurate decision). The State also has an interest in an accelerated timetable and a final decision that is not "unduly prolonged" with negative psychological effects on the children left in limbo. *See M.S.*, 115 S.W.3d at 548; *B.L.D.*, 113 S.W.3d at 353. "But the State's interests in economy and efficiency pale in comparison to the private interests at stake, and to the risk that a

---

[11]This conundrum is one which is properly acted on by the Legislature, rather than the courts. By the very nature of his request, John is asking for an extension of the deadline in which to try or dismiss the case. As currently drafted, the statute does not permit any extension whatsoever beyond one 180-day extension, then given only if good cause is shown and the extension would be in the best interest of the child. *See* TEX. FAM. CODE ANN. § 263.401(a).

14

parent may be erroneously deprived of his or her parental rights and the child may be erroneously deprived of the parent's companionship." *M.S.*, 115 S.W.3d at 548.

In this case, however, the State's interest in economy and efficiency were urgent. The State had a strong interest in conducting the termination proceeding in a timely fashion, in light of the fact that the deadline to try or dismiss the case was looming on the horizon like a harbinger of doom, as previously discussed. The stark reality of the situation left the State with a Hobson's choice—to either dismiss the case, which would result in R.M.T. living in limbo (as her father was hospitalized for mental problems) or proceed to trial while John remained incompetent. Here, the State's interest in economy, efficiency, and finality were strong. In light of the fact that the Texas Family Code does not allow for extensions beyond what was already given, this factor weighs in favor of conducting the termination proceeding forthwith.

"The parent's, child's, and government's interest in a just and accurate decision dovetails with the third *Eldridge* factor -- that of the risk of erroneous deprivation" of the parent-child relationship. *Id.* at 549; *In re S.K.A.*, 236 S.W.3d at 893. As previously noted, the Texas Family Code does not provide for a parental competency hearing in any type of case. However, the Code does provide for the appointment of an attorney ad litem for a parent who is the subject of a termination proceeding if the parent suffers from a mental or emotional illness or from a mental deficiency which renders the parent unable to provide for the physical, mental, and emotional

15

needs of the child. TEX. FAM. CODE ANN. § 161.003(b).[12] The Texas Family Code also allows for the discretionary appointment of an attorney ad litem for a person who is incapacitated. TEX. FAM. CODE ANN. § 107.010 (West 2008).

Other procedures designed to reduce the risk of an erroneous deprivation include the requirement that grounds for termination, including the best interest of the child, must be proved by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001. Further, appellate courts are to strictly scrutinize decisions to terminate parental rights. *See Troxel*, 530 U.S. at 80 (Thomas, J., concurring); *Holick*, 685 S.W.2d at 20–21 ("[T]ermination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent.").

John was represented in the termination proceeding by his attorney ad litem, who did all that one might anticipate could be done to guard against a trammeling of his rights and his concerns. John's interests were protected at trial as evidenced by his counsel's (1) timely assertion in his motion for continuance, statement of points, and closing argument of the precise due process issues now before this Court, (2) ensuring that the motion for continuance was heard in a timely fashion, (3) cross-examination of witnesses at trial, (4) actively asserting objections at trial, (5) advising John to assert his Fifth Amendment right against self-incrimination, and (6) providing an affidavit in support of the motion for continuance.

---

[12]This provision applies when termination is based on the mental or emotional illness or mental deficiency of the parent that renders the parent unable to provide for the physical, emotional, and mental needs of the child. TEX. FAM. CODE ANN. § 161.003.

John contends that the procedural safeguards as outlined above were nevertheless inadequate to prevent the risk of an erroneous deprivation of his parental rights. He urges this Court to adopt the additional procedural safeguard utilized in criminal cases—to prevent the government from subjecting him to trial at a time when he lacked "the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *See Alcott v. State*, 51 S.W.3d 596, 598 (Tex. Crim. App. 2001). John argues that his lack of competence caused him to be unable to assist his attorney by providing information to rebut evidence offered by the State and to provide information generally helpful to defend against the termination proceeding.

Here, John had already been determined to be mentally incompetent; thus, John maintains, there remained the risk of erroneous deprivation of his rights. Because termination is "traumatic, permanent, and irrevocable," "any significant risk of erroneous deprivation is unacceptable." *M.S.*, 115 S.W.3d at 549. Given that John was provided with the full panoply of constitutional safeguards provided by the Texas Family Code, we cannot conclude the risk of erroneous deprivation in this case was significant.

When the *Eldridge* factors are balanced against the presumption that our procedural rules[13] comport with constitutional due process requirements, we find that presumption has not been overcome. *See id.* at 547 (net result of *Eldridge* factors must be balanced against presumption

---

[13]The primary procedural rule at issue is Section 263.401 of the Texas Family Code, which imposes strict deadlines for resolution of termination cases. *See* TEX. FAM. CODE ANN. § 263.401.

17

that procedural rules comport with constitutional due process requirements). A calibration of the *Eldridge* factors in this case reveals that John was accorded all process due him in the parental rights termination hearing.[14] Moreover, the imposition of a requirement that John's termination trial be delayed indefinitely until a return of competence would contravene the State's and the child's interest in a final decision so that the child's adoption or placement in a stable home or return to the parent is not unduly prolonged. The trial court was given no indication of when John might regain competency, if ever. There is no indication that any magic potion was available to restore him to sanity before the "drop dead" date prescribed by statute. Given the exigent circumstances presented here, and in weighing the practical requirements of the circumstances, we find that John was accorded due process in his parental rights termination hearing. *See Mathews*, 424 U.S. at 334 ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.").

Having so determined, we address the issue of the requested continuance.

The decision to grant or deny a motion for continuance is within the trial court's sound discretion. *See* TEX. R. CIV. P. 251. Unless the record discloses a clear abuse of discretion, the trial court's denial of a motion for continuance will not be disturbed. *State v. Wood Oil Distrib. Inc.*, 751 S.W.2d 863, 865 (Tex. 1988); *E.L.T.*, 93 S.W.3d at 374. This Court cannot substitute its judgment for that of the trial court, but must only determine whether the trial court's action was so

---

[14]We further note that the statute does not provide for an extension of the deadline for resolution of termination cases beyond what was given in this case. *See* TEX. FAM. CODE ANN. § 263.401.

arbitrary as to exceed the bounds of reasonable discretion. *Philipp Bros.*, *Inc. v. Oil Country Specialists*, *Ltd.*, 709 S.W.2d 262, 265 (Tex. App.—Houston [1st Dist.] 1986, writ dism'd). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding rules and principles. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996).

In this regard, the trial court stated,

[T]he Court is of the opinion that the procedures set forth in the Texas Family Code related to the termination of parental rights in those cases meet the minimum due process requirements of the constitution.

And that at this juncture, the Court has been presented [with] no binding legal authority where any termination case has been halted or continued on the basis of the respondent parent's mental incompetency.

For the reasons articulated in this opinion, we find that the trial court did not abuse its discretion in denying John's motion for continuance.

### B. Did the Trial Court Err When It Allowed John to Testify Over Counsel's Objection?

In his final issue, John complains that the trial court erred when it allowed him to testify over his attorney's objection that he was not competent, in reliance on Rule 601 of the Texas Rules of Evidence. TEX. R. EVID. 601. [15] Rule 601 creates a general presumption of witness competency and provides, in pertinent part:

---

[15]At trial, counsel for the State called John as a witness. Counsel for John objected,

19

(a) **General Rule**. Every person is competent to be a witness except as otherwise provided in these rules. The following witnesses shall be incompetent to testify in any proceeding subject to these rules:

(1) *Insane persons.* Insane persons who, in the opinion of the court, are in an insane condition of mind at the time when they are offered as a witness, or who, in the opinion of the court, were in that condition when the events happened of which they are called to testify.

TEX. R. EVID. 601. Witness competency is a threshold question for the trial court to determine, and the trial court's ruling will not be disturbed on appeal unless an abuse of discretion is shown. TEX. R. EVID. 104(a); *Kokes v. College*, 148 S.W.3d 384, 389 (Tex. App.—Beaumont 2004, no pet.).

The burden of proof rests on the party who claims the witness is incompetent due to insanity to show the existence of insanity by a preponderance of the evidence. *Handel v. Long Trusts*, 757 S.W.2d 848, 854 (Tex. App.—Texarkana 1988, no pet.) (per curiam). In order to

---

[Counsel]: . . . . I'm going to object under Rule . . . 601. This witness is not competent to testify. If she wants to try to produce evidence that he is competent to testify, that's fine, but, you know, we've got reports from - - psychological reports that have been admitted as a prior motion that indicate - - motion for continuance, the reports that were attached that indicate he's not competent to testify. And I believe under Rule 601 . . . .

. . . .

THE COURT: The Court is inclined . . . to make a finding based upon not only the reports that were filed with the motion for continuance in this case that we heard last week, but also based on the Court's own observation of [John] throughout the course of this trial, he's not going to be able to testify.

. . . .

THE COURT: . . . . Ms. Russell, you want to ask this gentleman questions, I'm going to let you ask questions. . . .

20

demonstrate incompetency under Rule 601, it must be shown that the witness lacked the ability to perceive the relevant events, recall and narrate those events at the time of trial, or that the witness lacked the capacity to understand the obligation of the oath. *Mobil Oil Corp. v. Floyd*, 810 S.W.2d 321, 323 (Tex. App.—Beaumont 1991, orig. proceeding). Moreover, the adjudication of insanity creates a rebuttable presumption of insanity. *Id.* at 324; *Elliott v. Elliott*, 208 S.W.2d 709 (Tex. Civ. App.—Fort Worth 1948, writ ref'd n.r.e.).

The evidence attached to John's motion for continuance indicates that John could not rationally or factually discuss his case with his attorney, could not rationally communicate with his attorney, and could not discuss his legal situation. John suffered from schizoaffective disorder, polysubstance dependence, cognitive disorder, and personality disorder with paranoid and antisocial traits. In October 2010, it was reported that John "has been unable to achieve competency to stand trial during this hospitalization" and that in the physician's opinion, "the patient's condition . . . is expected to continue for more than 90 days." In February 2011, John's attorney ad litem and guardian ad litem both opined that John lacked the capacity to understand the nature and objective of the proceeding against him and to consult with his attorney ad litem in preparing a defense to the allegations made by the Department. This evidence was not disputed at trial.[16]

---

[16]There was some indication at trial that the exhibits attached to John's motion for continuance were not independently introduced, and, thus, John could not rely on them to support his claim of incompetency. Because the State did not raise this issue on appeal, we do not address it.

21

Further, the trial court stated on the record that based on its own observations during the course of the trial, John would not be able to testify. The trial court further indicated that while it would attempt to swear the witness (John) in, "I'm almost confident he will not comprehend what I'm asking." Finally, after swearing the witness in, the trial court stated, "I want the record to reflect that the witness was unable to follow the instruction to keep his hand held up. He indicates he understands the oath that he's taken, although the Court doubts that to be the case."

John had previously been judicially declared incompetent to stand trial in another case based on medical evidence. While the prior judgment of incompetence does not disqualify John from testifying, it does create a presumption of incompetency. *See Floyd*, 810 S.W.2d at 323–24.[17] This presumption, together with the records of John's incompetency, the appointment of a guardian ad litem for John,[18] and the comments of the trial court[19] are solid evidence that John was incompetent at the time of trial. Because the State did nothing to rebut the presumption of John's incompetence, the trial court acted outside of its discretion when it permitted John to testify over the objection of counsel.

On appeal, the State concedes John was incompetent to testify at trial, but maintains that because John has not demonstrated, argued, or even contended that the admission of his testimony

[17]As a general rule, a person is presumed to be sane until such time as he is found to be insane, but once found to be insane, he is presumed to be insane until such time as he is found to be sane. *Floyd*, 810 S.W.2d at 324.

[18]The appointment of a guardian creates a presumption of incompetency in other proceedings. *Barker v. Roelke*, 105 S.W.3d 75, 85 (Tex. App.—Eastland 2003, pet. denied).

[19]The comments of the trial court indicate that John may well have lacked the capacity to understand the obligation of the oath.

22

resulted in an improper judgment, his Rule 601 argument must fail. We agree. In order to reverse a judgment based on an error in the admission of evidence, the complaining party must not only show that the trial court committed an error, but also that the error was reasonably calculated to cause, and probably did cause, rendition of an improper judgment. *See* TEX. R. APP. P. 44.1; *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009).

John has not argued that this error has precipitated any harm and we do not perceive that any harm was occasioned by the fact that John was permitted to testify, despite his apparent incompetency. It is apparent that his appearance on the stand as a witness likely confirmed the lack of competency under which he was suffering and we see nothing he stated while testifying which would have damaged his case. As a result, our review of the record does not lead us to believe that an improper judgment probably resulted due to the admission of John's brief testimony.[20] John testified that he knew his daughter is R.M.T., and related that "[s]he's very smart." While many of John's answers were unintelligible, he testified that he lives at 414 South Jean in Longview and that he wants the best for R.M.T. John did not know when he would get out of jail, but was told it would be a couple of weeks. He believes that his ex-wife, Cindy, will help take care of R.M.T.

---

[20]In reviewing a matter tried before the court, the appellate court generally assumes that the trial court disregarded any incompetent evidence. *Gillespie v. Gillespie*, 644 S.W.2d 449, 450 (Tex. 1982). The admission of such evidence generally does not require reversal of the judgment where there is competent evidence to authorize its rendition. *Id.* Moreover, no reversible error exists unless the entire case turns on the evidence improperly admitted. *Roberts v. Clark*, 188 S.W.3d 204, 208 (Tex. App.—Tyler 2002, no pet.).

John's parental rights were terminated under subsections 161.001(1)(D) and (E) of the Texas Family Code.[21] John's abbreviated testimony does not touch on the grounds for termination presented by the State. If anything, his testimony indicates that he cares about R.M.T. and wants what is best for her. It is not probable that the erroneous admission of John's testimony resulted in the rendition of an improper judgment. We overrule this issue.

## III. Conclusion

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

CONCURRING OPINION

The trial court needs the authority to exercise discretion and judgment in setting a hearing to terminate parental rights. Here, the primary rationale for proceeding with this termination

---

[21]The pertinent sections of the Texas Family Code provide that a parent-child relationship may be terminated if the court finds by clear and convincing evidence that the parent has:

> (D)     knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

> (E)     engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; . . . .

TEX. FAM. CODE ANN. § 161.001(1)(D), (E).   In addition, Section 161.001(2) requires clear and convincing evidence that termination is in the best interest of the child.   TEX. FAM. CODE ANN. § 161.001(2).

hearing was that the state-mandated dismissal sword was hanging over the head of the trial court and the parties. Failure to conduct the hearing would require a dismissal of the case which might produce negative consequences for the child. To comply with the statute, the trial court had to proceed to trial regardless that the father was legally incompetent to understand the proceedings or assist his lawyer. Often this occurs in criminal cases, and generally the defendant is treated at a state hospital and regains competency and then the trial is conducted. But in termination of parental rights cases, the "capital punishment of civil law," the judge's discretion is effectively removed by the statute requiring dismissal of the case if it has not been resolved within the statutory limitation.

This is unfair not only to the parent, who does not understand what is happening, but also the State may prematurely seek termination if the only other option is dismissal of the case. Finally, the ultimate concern should be with the child. Is it probable the child will be adopted? Is the child thriving in the present environment? Is resolving the parental right immediately necessary for the well-being of the child? These matters are swept aside in a rush to conclude the case. The Legislature should amend the statute and allow the trial judges to exercise their good judgment and discretion in setting final termination hearings.

I concur in the judgment.


Jack Carter

25

Justice

Date Submitted:     September 28, 2011
Date Decided:       October 5, 2011