

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00454-CV

Charlene **MENDEZ**,
Appellant

v.

Jeremy **DELGADO**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-CI-10408
Honorable Karen H. Pozza, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:       Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice
               Irene Rios, Justice

Delivered and Filed: July 17, 2019

AFFIRMED

Charlene Mendez appeals the trial court's judgment in a divorce action. In four issues, Mendez argues the trial court abused its discretion by (1) denying her motion for continuance, (2) proceeding to trial without the presence of the Office of the Attorney General, (3) precluding the amicus attorney from complying with her obligations under the Texas Family Code, and (4) appointing her former husband, Jeremy Delgado, sole managing conservator of their sixteen-month-old child, C.S.D. We affirm.

## BACKGROUND

Mendez and Delgado were married in Bexar County, Texas. About ten months later, Mendez gave birth to C.S.D. When C.S.D. was only eight months old, Delgado filed a petition for divorce and Mendez filed a counter-petition. The trial court issued temporary orders regarding C.S.D.

In its initial temporary orders, the trial court appointed Mendez and Delgado temporary joint managing conservators of C.S.D. and restricted C.S.D.'s residence to Bexar County. Delgado, who was working in Las Vegas, Nevada, was granted possession of C.S.D. on weekends when he came to San Antonio, Texas, and Mendez was granted possession of C.S.D. at all other times. The trial court appointed an amicus attorney to investigate and report to the trial court concerning C.S.D.'s best interest. The trial court also ordered both Mendez and Delgado to participate in psychological evaluations.

After reviewing the results of the psychological evaluations, the trial court modified its temporary orders to limit Mendez's contact with C.S.D. to supervised visits. These visits were to be monitored by a non-relative third party, either Kids Exchange or Guardian House. Under the modified temporary orders, C.S.D. was required to live with his paternal grandmother in San Antonio, and Delgado was granted possession of C.S.D. on weekends and other times when he was in San Antonio. Additionally, if Delgado was unable to travel to San Antonio for a weekend, C.S.D was permitted travel to Las Vegas for a weekend visit with Delgado.

The case was set for a final trial on the merits. Five days before trial, Mendez filed a motion for continuance, stating she was "in therapy and making substantial progress and recovery," but was seeking an indefinite continuance of the trial to "allow her a full recovery." Additionally, Mendez filed a motion for further modification of the temporary orders.

On the day of trial, Mendez announced "not ready" for trial, but "ready" on her motion to further modify the temporary orders. Mendez's counsel informed the trial court that Mendez had "some mental issues," but that she had been on medication, was in therapy, and was making "great strides." However, counsel stated Mendez "needs a little bit more help" and "requiring her to go to court today to finalize this matter, for a 16-month old baby, is not in the best interest of the child." The trial court asked counsel how much additional time Mendez needed, but counsel could not say. The trial court denied the motion for continuance.

At trial, Delgado, Mendez, and several other witnesses testified. The evidence showed that Mendez and Delgado had met and married in Bexar County, Texas. After the couple married, Delgado obtained a promotion at work and relocated to Las Vegas, Nevada. Mendez remained in San Antonio until after C.S.D.'s birth, and then Mendez and C.S.D. joined Delgado in Las Vegas.

While in Las Vegas, Mendez started exhibiting troubling behavior. Delgado testified that Mendez "started to get really violent with me, really paranoid, constantly thinking is this the right child, and then just sometimes violent in the middle of the night, and just at random times whenever she would get angry, she would get violent." Mendez physically attacked Delgado—hitting him, scratching him, grabbing him, pulling his hair, and pushing him. On multiple occasions, Mendez attacked Delgado while he was holding C.S.D. According to Delgado, Mendez "was not afraid to push me down with the child in my arms[] or try to take a swing at me with the child in my arms." After several of these attacks, Delgado called the police and Mendez was arrested twice. Delgado further testified that when Mendez became aggressive she "didn't care about anything;" "she didn't care if she broke something, she didn't care if she hurt someone, she didn't care what the cops said." One day, while Delgado was at work, Mendez took C.S.D., boarded a bus, and returned to San Antonio. Mendez did not tell Delgado that she and C.S.D. were leaving Las Vegas.

After the divorce action was filed and temporary orders were issued, Mendez was diagnosed with schizophrenia and was prescribed medication. According to Mendez's parents, Mendez benefitted from the medication because it made her more focused. Notwithstanding her improved condition, Mendez rarely exercised visitation with C.S.D. under the modified temporary orders, which required Mendez to initiate her supervised visits with C.S.D. In a three-month period, Mendez initiated and attended only two visits with C.S.D.

After hearing all the evidence, the trial court granted the divorce and appointed Delgado sole managing conservator and Mendez possessory conservator. The trial court filed findings of fact and conclusions of law. Mendez appealed.

### MOTION FOR CONTINUANCE

In her first issue, Mendez argues the trial court abused its discretion by denying her motion for continuance based on Rule 601 of the Texas Rules of Evidence. In her motion for continuance, Mendez did not cite to Rule 601 or claim she was incompetent to testify. Instead, Mendez "move[d] that the trial on the merits be continued in order to allow her a full recovery." Mendez argued that "having a trial to finalize the pending divorce is and will be detrimental to her, her case[,] and not in the best interest of the child."

As a prerequisite to presenting a complaint for appellate review, the record must show that the appellant complained to the trial court by a timely request, objection, or motion stating the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, unless the grounds were apparent from the context. TEX. R. APP. P. 33.1(a)(1). Additionally, an appellant's complaint on appeal must comport with the complaint she made in the trial court. *Texas Farmers Ins. Co. v. Clack*, No. 04-17-00348-CV, 2018 WL 2024664, at *4 (Tex. App.—San Antonio May 2, 2018, pet. denied). Because the complaint Mendez presents on

appeal differs from the complaint she made in her motion for continuance, she has not preserved this issue for review on appeal. *See id.*; TEX. R. APP. P. 33.1(a)(1).

Mendez further argues in this section of her brief that the trial court abused its discretion by denying her motion for new trial. However, Mendez's motion for new trial did not present a complaint about Rule 601(a)(1) or her competence to testify. Therefore, Mendez's complaint about the denial of the motion for new trial is not preserved for our review. *See* TEX. R. APP. P. 33.1(a)(1).

Nevertheless, even if Mendez's Rule 601 complaint had been preserved for our review, we would overrule it. Under Rule 601(a), every person is presumed competent to testify. TEX. R. EVID. 601(a). The party asserting that a witness is incompetent to testify bears the burden of proving it. *Ortega v. Pean*, No. 01-18-00249-CV, 2019 WL 1560859, at *9 (Tex. App.—Houston [1st Dist.] Apr. 11, 2019, no pet.). Thus, the burden of proof was on Mendez to establish that she was incompetent to testify. *See id.*

Rule 601(a)(1) provides that a witness is incompetent to testify if she is "insane" at the time of trial or if she "was insane at the time of the events about which [she] is called to testify." TEX. R. EVID. 601(a)(1). A witness is not necessarily incompetent to testify because of a mental infirmity. *In re Commitment of Edwards*, 443 S.W.3d 520, 528 (Tex. App.—Beaumont 2014, pet. denied). A party who claims a witness is incompetent to testify based on Rule 601(a)(1) must show that the witness either (1) lacked the ability to perceive the relevant events, (2) is unable to recall and narrate those events at the time of trial, or (3) lacks the capacity to understand the obligation of the oath. *In re R.M.T.*, 352 S.W.3d 12, 25 (Tex. App.—Texarkana 2011, no pet.). A witness's incompetence to testify must be established by a preponderance of the evidence. *Id*. We review the trial court's ruling on witness competency for an abuse of discretion. *In re Edwards*, 443 S.W.3d at 528.

The primary case Mendez cites is *In re R.M.T.*, 352 S.W.3d at 24-26. In that case, the appellate court held the trial court abused its discretion in overruling a Rule 601(a)(1) objection and permitting the appellant to testify because the undisputed evidence showed that he could not rationally communicate with his attorney or discuss his legal situation because of a mental illness and that he lacked the capacity to understand the nature of the proceeding against him and consult with his attorney ad litem to prepare a defense. *Id.* at 25. Furthermore, the appellant had been judicially declared incompetent to stand trial in another case, and the trial court had commented that based on its own observations during the course of the trial, the appellant would not be able to testify. *Id.*

In arguing that she was incompetent to testify under Rule 601(a)(1), Mendez points to general testimony about her mental health diagnosis and her past behavior, but she does not direct our attention to evidence specifically addressing her competency to testify. Unlike the appellant in *In re R.M.T.*, Mendez did not present specific evidence showing she lacked the ability to perceive relevant events or to recall and narrate those events at the time of trial. *See id.* at 25-26. Additionally, Mendez did not present specific evidence showing she lacked the capacity to understand the obligation of the oath. *See id.* at 25.

Because Mendez failed to meet her burden to establish her incompetence to testify by a preponderance of the evidence, the trial court did not abuse its discretion in allowing Mendez to testify. We overrule Mendez's first issue.

### OFFICE OF THE ATTORNEY GENERAL

In her second issue, Mendez complains the trial court abused its discretion by proceeding to trial without the Office of the Attorney General. Mendez asserts the Office of the Attorney General was a necessary party to the divorce action and that it was not notified of the trial setting. However, the record does not show that Mendez presented this complaint to the trial court by a

timely and specific request, objection, or motion. Because the complaint presented in Mendez's second issue was not presented to the trial court, Mendez has not preserved this issue for appellate review. *See* TEX. R. APP. P. 33.1(a)(1).

However, even if this complaint had been preserved for our review by a timely and specific objection in the trial court, we would overrule it. First, Mendez has no standing to complain about the Attorney General's alleged lack of notice. An appellant may not complain of errors that do not injuriously affect her or that merely affect the rights of others. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex. 1973); *K.B. v. N.B.*, 811 S.W.2d 634, 641 (Tex. App.—San Antonio 1991, writ denied). Second, Mendez does not argue, much less show, that the alleged error probably caused the rendition of an improper judgment or prevented her from presenting her case on appeal. *See* TEX. R. APP. P. 44.1(a) (providing an appellate court may not reverse a judgment unless the complained-of error probably caused the rendition of an improper judgment or prevented the proper presentation of the case on appeal).[1] We overrule Mendez's second issue.

**AMICUS ATTORNEY**

In her third issue, Mendez argues the trial court abused its discretion by precluding the amicus attorney from complying with section 107.003(a)(1)(F) and (G) of the Texas Family Code, which requires an amicus attorney to "participate in the conduct of the litigation to the same extent as an attorney for a party" and to "take any action consistent with the child's interests that the attorney considers necessary to expedite the proceedings." TEX. FAM. CODE ANN. § 107.003(a)(1)(F), (G). Again, the record does not show that Mendez presented this complaint to

---

[1]Additionally, Mendez bases this complaint on a document that is attached to her appellate brief but not included in the appellate record. We cannot consider documents attached to briefs that are not included in the clerk's record or the reporter's record filed on appeal. *See Texas Dep't of Public Safety v. Ryerson*, No. 04-16-00276-CV, 2016 WL 7445063, at *1 n.1 (Tex. App.—San Antonio Dec. 28, 2016, pet. denied).

the trial court by a timely and specific request, objection, or motion. Therefore, Mendez has not preserved this issue for appellate review. *See* TEX. R. APP. P. 33.1(a)(1).

But even if this complaint had been preserved for our review, we would overrule it. Nothing in the record shows that the amicus attorney was precluded from complying with her obligations under section 107.003(a)(1)(F) and (G) of the Texas Family Code. To the contrary, the record shows the amicus attorney participated in the litigation to the same extent as the other attorneys in the case, and her actions were consistent with C.S.D.'s interests and expedited the proceedings.

Prior to trial, the amicus attorney was present at two hearings on temporary orders. Additionally, the amicus attorney talked to Mendez, Delgado, and C.S.D.'s grandparents, and observed Mendez and Delgado's interactions with C.S.D. She also visited the grandparents' homes in San Antonio and traveled to Las Vegas to visit Delgado's home and a prospective day care for C.S.D.

On the day of trial, the amicus attorney was present for a hearing on Mendez's motion for continuance. At this hearing, the amicus attorney told the trial court that she had a conflicting setting in another courtroom and she anticipated the other hearing would be quick because only one witness was testifying. The amicus attorney specifically advised the trial court that she did not mind if the trial of the case started without her.

When the amicus attorney returned to the courtroom, the trial court recessed so the other attorneys could tell the amicus attorney what had already transpired. Thereafter, the amicus attorney fully participated in the trial. The amicus attorney cross-examined witnesses. The trial court gave the amicus attorney the opportunity to put on evidence, and the amicus attorney recalled Mendez as a witness and questioned her. Finally, the amicus attorney provided the trial court with detailed recommendations about conservatorship and visitation.

By agreeing to proceed to trial without further delay, the amicus attorney expedited the proceeding in a manner consistent with C.S.D.'s best interest. C.S.D. was living at his paternal grandmother's house in San Antonio, and Delgado was living and working in Las Vegas. On the weekends, either Delgado would travel to San Antonio, or C.S.D. and his grandmother would travel to Las Vegas. The evidence showed these trips were long and disruptive for C.S.D., and the "back and forth" between San Antonio and Las Vegas created a hardship for both C.S.D. and Delgado.

Based on this record, we reject Mendez's argument that the trial court precluded the amicus attorney from complying with her obligations under section 107.003(a)(1)(F) and (G). We overrule Mendez's third issue.

**SOLE MANAGING CONSERVATORSHIP**

In her fourth issue, Mendez argues the trial court abused its discretion in appointing Delgado sole managing conservator of C.S.D.

We review conservatorship orders for an abuse of discretion, reversing only if the trial court's decision is arbitrary, unreasonable, or without reference to any guiding rules or principles. *In re I.G.W.*, No. 04-17-00161-CV, 2018 WL 3265292, at *1 (Tex. App.—San Antonio July 5, 2018, no pet.); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). The primary consideration in determining conservatorship is the child's best interest. TEX. FAM. CODE ANN. § 153.002; *In re J.D.D.*, No. 04-08-00930-CV, 2009 WL 2778660, at *1 (Tex. App.—San Antonio Sept. 2, 2009, pet. denied). The trial court has broad discretion in determining the child's best interest. *In re J.D.D.*, 2009 WL 2778660, at *1. Although legal and factual insufficiency of the evidence are not independent grounds for challenging a conservatorship determination, they are relevant factors in considering whether the trial court abused its discretion. *Id*. A trial court does not abuse its discretion if it bases its decision on conflicting evidence or if there is some evidence of substantive

and probative value to support its decision. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re I.G.W.*, 2018 WL 3265292, at *1. In conducting our review, we defer to the trial court's resolution of underlying facts and credibility determinations that may have affected its decision. *In re J.D.D.*, 2009 WL 2778660, at *1.

In her pleadings and at trial, Mendez asked the trial court to appoint her and Delgado joint managing conservators of C.S.D. However, the trial court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect or physical abuse by one parent directed against the other parent, a spouse, or a child. TEX. FAM. CODE ANN. § 153.004(b); *see In re I.G.W.*, 2018 WL 3265292, at *2; *In re A.M.*, 418 S.W.3d 830, 843 (Tex. App.—Dallas 2013, no pet.). Here, the trial court expressly found "credible evidence of a history or pattern of past or present child neglect and physical abuse by [] Mendez directed against C.S.D. and [] Delgado…." On appeal, Mendez argues the trial court abused its discretion in appointing Delgado as sole managing conservator because there was "no testimony from any witness that appointing Delgado as sole managing conservator was in the child's best interest." [2] We disagree.

At trial, evidence was presented to support a finding of a history or pattern of past or present child neglect and physical abuse by Mendez. As to neglect, Mendez did not take C.S.D. to the doctor while the child was in her care. When C.S.D. was finally seen by a doctor at eleven months old, the child was under weight for his age and tested positive for lead in his blood. Additionally, on one occasion, Mendez refused to place C.S.D. in a car seat while travelling in a car. As to

---

[2]Mendez also argues Delgado's appointment as sole managing conservator is not supported by the pleadings. Mendez acknowledges that Delgado asked to be appointed sole managing conservatorship in his petition; however, she claims Delgado amended his pleadings to request joint managing conservatorship during his trial testimony. Mendez cites no authority in her brief to support this contention. The Texas Rules of Appellate Procedure require an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Therefore, to the extent Mendez argues that Delgado's testimony constituted a trial amendment, this issue is inadequately briefed and presents nothing for our review. *See id.*

physical abuse, Mendez had been physically violent toward Delgado and C.S.D. Mendez had hit and pushed Delgado while he was holding C.S.D., causing Delgado to fall while he had C.S.D. in his arms. On several occasions, Mendez's violent behavior prompted Delgado to call the police and Mendez was arrested twice.

In sum, the trial court's finding of credible evidence of a history or pattern of past or present child neglect and physical abuse by Mendez is supported by ample evidence. Because some evidence of substantive and probative value supports the trial court's decision to appoint Delgado sole managing conservator of C.S.D., the trial court did not abuse its discretion. We overrule Mendez's fourth issue.

## CONCLUSION

The trial court's judgment is affirmed.

Irene Rios, Justice