In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00575-CV**
_____

**IN RE COMMITMENT OF KEVIN WAYNE EDWARDS**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 13-05-05231-CV**

**OPINION**

The State of Texas filed a petition to commit appellant Kevin Wayne Edwards as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2013). A jury found that Edwards is a sexually violent predator, and the trial court signed a final judgment and an order of civil commitment. In four appellate issues, Edwards challenges the constitutionality of Chapter 841 of the Texas Health and Safety Code as applied to him, the exclusion of evidence concerning lack of treatment for his mental illness during civil commitment, the trial court's requiring him to testify because he is "an 'insane' person[,]" and the trial court's denial of his motion to have counsel present during

his post-petition psychiatric examinations. We affirm the trial court's judgment and order of civil commitment.

## ISSUE ONE

In his first issue, Edwards contends Chapter 841 of the Texas Health and Safety Code (the SVP statute) is unconstitutional as applied to him. Specifically, Edwards asserts that because he suffers from schizoaffective disorder, bipolar type, "application of Chapter 841 to Mr. Edwards clearly is undisguised punishment . . . ." According to Edwards, the statute is punitive as applied to him because he would receive no treatment for his mental illness if he were committed under Chapter 841.

We first address the State's contention that Edwards failed to preserve this issue for appellate review. In its brief, the State contends that although Edwards filed a motion with the trial court seeking a declaration that the SVP statute is unconstitutional as applied to him, Edwards did not obtain a ruling on said motion. However, the record reflects that Edwards's counsel argued the motion and obtained a ruling before trial began. Therefore, we conclude that Edwards preserved the issue for appellate review. *See* Tex. R. App. P. 33.1(a).

"Under an 'as applied' challenge, the challenging party contends that the statute, although generally constitutional, operates unconstitutionally as to him or

2

her because of the challenging party's particular circumstances." *In re Commitment of Fisher*, 164 S.W.3d 637, 656 n.17 (Tex. 2005). Therefore, we must evaluate the statute as it operates in practice against Edwards. *See Tex. Mun. League v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 381 (Tex. 2002).

> In construing the statute and its effect, we consider several factors, including: the statute's purpose; the circumstances of the statute's enactment; the legislative history; common-law or former statutory provisions, including laws on the same or similar subjects; a particular construction's consequences; administrative construction of the statute; and the title, preamble[,] and emergency provision.

*Id*. The party attacking the statute bears the burden of showing that the statute is unconstitutional. *Id*.

In enacting Chapter 841 the Legislature found that:

> [A] small but extremely dangerous group of sexually violent predators exists and . . . those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence. The legislature finds that the existing involuntary commitment provisions of Subtitle C, Title 7, are inadequate to address the risk of repeated predatory behavior that sexually violent predators pose to society. The legislature further finds that treatment modalities for sexually violent predators are different from the traditional treatment modalities for persons appropriate for involuntary commitment under Subtitle C, Title 7. Thus, the legislature finds that a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state.

*Fisher*, 164 S.W.3d at 639-40 (quoting Tex. Health & Safety Code Ann. § 841.001 (West 2010)). "A person committed under the Act has a behavioral abnormality, a congenital or acquired condition that, by affecting the person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense." *Beasley v. Molett*, 95 S.W.3d 590, 607 (Tex. App.—Beaumont 2002, pet. denied) (citing Tex. Health & Safety Code Ann. §§ 841.002(2), 841.003(a) (West Supp. 2013); *Kansas v. Hendricks*, 521 U.S. 346, 362-63 (1997)).

As previously discussed, Edwards bore the burden of demonstrating that the SVP statute operates unconstitutionally as applied to him. *See Tex. Mun. League*, 74 S.W.3d at 381. Edwards attached to his motion deposition testimony from the State's experts, psychiatrist Dr. Sheri Gaines and psychologist Dr. Randall Price, as well as other documents, including a clinical psychologist's recommendation that Edwards be found incompetent to stand trial.[1] According to Edwards's motion, Gaines testified that Edwards is "100 percent psychotic" and his "thought [is] full of delusional content, both grandiose and paranoid[.]"

---

[1]Psychologist Dr. Roger Saunders opined as follows in his report: "With respect to the Outpatient Sexually Violent Predator Treatment Program, [Edwards] would be disqualified based on the 'person exhibits an overt and uncontrolled psychosis' criterion for admission. With adequate medication therapy however, Mr. Edwards could be expected to minimally participate in an SOTP program, however with moderate difficulty. Some accommodations would be needed."

4

In her deposition, Gaines testified that she diagnosed Edwards with schizoaffective disorder, alcohol abuse, cannabis abuse, sexual abuse of an adult, sexual abuse of a child, and antisocial personality traits. Gaines also testified in her deposition that Edwards exhibited some delusional and illogical thinking during her interview with him. When asked whether she believed Edwards would be able to complete the sex offender treatment program, Gaines testified, "I work with a lot of seriously mentally ill people, and I'm a firm believer that everyone has the ability to benefit from treatment. So I do believe that there's some treatment out there that could be helpful for Mr. Edwards. It would need to be customized for him, however." Gaines further explained that Edwards would only benefit from such customized treatment if he were also properly medicated, and he would need "special guidance." In addition, Gaines testified that Edwards had previously failed at sex offender treatment because he committed another sexual offense, and she opined that he could have reoffended because of his mental status.

Gaines further opined that medication might not make Edwards less likely to sexually offend because "he's demonstrated [an] inability to be properly medicated. . . . [H]e has had access to medical care and he has been treated with medications and remained psychotic." According to Gaines, Edwards's mental illness is "part of who he is. It's part of his whole big picture. And it's a risk factor

5

for him. And it does impair his impulse control and make him more likely to be violent." When asked during the deposition whether Edwards's schizoaffective disorder constituted his behavioral abnormality for purposes of the SVP statute, Gaines explained, "No. A diagnosis is not a behavioral abnormality. . . . [S]chizoaffective disorder is something that Mr. Edwards has. It's one of his diagnoses, and it does contribute to his behavioral abnormality." Gaines explained that Edwards's antisocial features also contribute to his sexual offending.

In his deposition, Dr. Randall Price testified that during his interview with Edwards, Edwards's delusions "intruded on his thinking[,]" but Edwards "didn't seem to lose sight of what the evaluation was about." Price explained that he diagnosed Edwards with schizoaffective disorder, bipolar type, alcohol use disorder, and cannabis use disorder. Price stated that although he did not diagnose Edwards with antisocial personality disorder, Edwards "certainly has a lot of adult antisocial behavior and attitudes[.]" Price opined that Edwards's mental illness "very well could have" been a factor in Edwards's inability to complete sex offender treatment.

According to Price, schizoaffective disorder can be controlled with proper medication. When asked whether Edwards could have avoided committing some of his offenses if he had been properly medicated, Price explained, "I think it was a

factor. I think his mental disorder was one factor . . . . [I]f he had been compliant with the appropriate treatment and not using alcohol or other substances . . . I think it would have at least reduced the chances of those offenses having occurred." Price also opined that "it's less likely" that Edwards's denial and lack of empathy are strongly related to his mental illness. When asked how he differentiated Edwards's antisocial features from his mental illness, Price explained, "there is overlap, but some people with mental illness like his don't have a criminal history, don't engage in criminal conduct, don't engage in sex offenses. So there's overlap there." Price explained that the congenital or acquired condition Edwards suffers from is "a constellation of things. The primary part of it is the schizoaffective disorder, bipolar type, but also involved in that behavior or behavioral abnormality is a history of substance use problems, antisocial attitudes and behaviors, having committed two deviant sexual acts, one on a child, one on an adult and then . . . the non[-]adherence or the lack of compliance with treatment of the schizoaffective disorder. . . . There can be more than one factor or disorder that comprises that condition that is defined as a behavioral abnormality."

As discussed above, the SVP statute was created specifically to provide a commitment procedure for an "extremely dangerous group of sexually violent predators" who "have a behavioral abnormality that is not amenable to traditional

mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." Tex. Health & Safety Code Ann. § 841.001. A person committed under Chapter 841 has "a behavioral abnormality, a congenital or acquired condition that, by affecting the person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense." *Beasley*, 95 S.W.3d at 607 (citing Tex. Health & Safety Code Ann. §§ 841.002(2), 841.003(a); *Hendricks*, 521 U.S. at 362-63)). Edwards's pretrial motion failed to demonstrate that because of his schizoaffective disorder, Chapter 841 operated unconstitutionally as applied to him. *See Fisher*, 164 S.W.3d at 653-54; *Tex. Mun. League*, 74 S.W.3d at 381. Therefore, the trial court did not err by denying his motion. Accordingly, we overrule issue one.

## ISSUE TWO

In his second issue, Edwards argues that the trial court erred by excluding evidence that a Chapter 841 civil commitment provided no treatment for his mental illness, while "regular" mental-health civil commitment would provide such treatment. Specifically, Edwards complains that the trial court permitted Gaines to testify that "regular" mental health civil commitment did not address sexual deviance or provide sex offender treatment, but did not permit defense experts to

8

testify that Edwards would not receive mental illness treatment if he were committed under Chapter 841.

"We review a trial court's evidentiary rulings for abuse of discretion." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000); *see In re Commitment of Salazar*, No. 09-07-345 CV, 2008 WL 4998273, at \*2 (Tex. App.—Beaumont Nov. 26, 2008, pet. denied) (mem. op.). Error may not be predicated upon a ruling that excludes evidence unless the party's substantial rights are affected. Tex. R. Evid. 103(a). We will not reverse a judgment based on an error of law unless that error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the appellate court. Tex. R. App. P. 44.1(a).

Gaines testified that she reviewed records pertaining to Edwards and conducted an interview of Edwards. Gaines opined that Edwards has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Gaines testified that she considered Edwards to be sexually deviant based upon his two convictions for sexual offenses and his sexually inappropriate statements during her interview of him. When asked how Edwards's schizoaffective disorder relates to his history of sexual offenses, Gaines explained as follows:

> I don't think it's possible to separate out where the sexual deviance is, where the schizoaffective disorder begins, where that ends and the

9

anti-social traits begin; and it's not necessary for our purposes here today. It might be helpful in treatment to try to understand Mr. Edwards better, to try to direct his treatment in a particular area, but for our purposes here today, those three things are present in Mr. Edwards. Those three things feed off of each other, actually make each other worse and make him have a behavioral abnormality.

Gaines testified that although Edwards had been prescribed various types of medications, Edwards is still psychotic and his symptoms are "certainly not fully controlled at this time." Gaines also explained that Edwards had been "consistently noncompliant" with respect to taking his medication. According to Gaines, Edwards's sexual deviancy, schizoaffective disorder, and antisocial personality traits "all feed off of each other. They all make the next one worse. . . . So, he's got hypersexuality from the schizoaffective disorder; and he's got no regard for people from the anti-social personality traits."

When asked how mental health commitments differed from Chapter 841 commitments, Gaines testified:

> A regular civil commitment for mental health treatment under the Texas statute is when someone is imminently dangerous to themselves or others or will decompensate to that level if they do not get treatments and then they go in-patient for the civil commitment and receive psychiatric treatment. . . . They may go to a psychiatric hospital . . . with the focus being on medication and getting someone to the point where they are no longer dangerous to themselves or others; and when they get to the point where they are no longer dangerous to themselves or others, then they are released.

Gaines explained that regular civil commitments for mental health do not address sexual deviance and do not provide sex offender treatment. During cross-examination, when Edwards's counsel asked whether Edwards would receive treatment for his mental illness during a commitment under Chapter 841, the trial court sustained the State's relevancy objection. Gaines opined that Edwards needs mental health treatment "for a lot of reasons including deviant behavior."

Clinical psychologist Dr. Roger Saunders, who was called as an expert witness by Edwards, testified that after interviewing Edwards and reviewing records, he diagnosed Edwards with "a psychotic disorder[,]" and he explained that a diagnosis of schizoaffective disorder, bipolar type, is "consistent with the record." Saunders explained that psychotic disorder is "recognized as a severe mental illness." The trial judge sustained the State's objection to a question regarding whether a person who has a major mental illness could complete a sex offender treatment program. The defense later re-called Saunders to the stand to make a bill of exceptions. During the bill of exceptions, Saunders opined that Edwards "would not be capable of participating" in sex offender treatment. Saunders also opined that without traditional mental health treatment, Edwards would not be able to participate in sex offender treatment, and that Edwards's

11

mental illness will preclude him from participating in or benefiting from the type of treatment that would be ordered under Chapter 841.

Edwards also called psychologist Dr. Marisa Mauro to testify as an expert witness on his behalf. Mauro testified that she evaluated Edwards for behavioral abnormality and determined that Edwards does not have a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. Mauro testified that "paraphilias are the only conditions that obviously relate to problems with controlling a sexually deviant behavior[,]" and she testified that she did not diagnose Edwards with any type of paraphilia. Mauro testified that Edwards's two convictions constitute the only evidence that Edwards has a sexually deviant personality.

Mauro explained that she diagnosed Edwards with schizoaffective disorder, bipolar type, and that although he does not have antisocial personality, he does have some antisocial traits. Mauro testified that when she interviewed Edwards, he was "highly delusional" and "manic." According to Mauro, "[t]he primary modality for treatment of schizoaffective disorder is psychiatric medication and then if the person stabilizes some and is open to working on their thoughts, feelings, and behaviors at that time in a non-delusional state, therapy as well." According to Mauro, Edwards's schizoaffective disorder affects his emotional

12

volitional capacity and is a congenital or acquired condition, but it does not make him likely to engage in a predatory act of sexual violence. Mauro characterized Edwards's risk of sexual re-offense as "low moderate to moderate[.]" The trial court sustained the State's relevancy objections to questions that attempted to elicit from Mauro testimony concerning (1) how the legislative findings in the SVP statute assist in determining whether someone has a behavioral abnormality, and (2) the meaning of a person being amenable to traditional mental health treatment modalities.

Edwards's counsel later called Mauro to make an offer of proof. During the offer of proof, Mauro explained that she is familiar with traditional mental health commitments. Mauro stated that Edwards's illness is of the type that would lend itself to traditional mental health commitment, and she explained that the focus of the treatment would be to ensure that Edwards would no longer be a danger to himself or others and would no longer have symptoms that interfere with his ability to care for himself and make rational decisions. Mauro explained that inpatient mental health commitment takes place in a more secure facility than sexually violent predator commitment. In addition, Mauro opined that Edwards would not benefit from sex offender treatment due to his mental illness. Mauro stated that Edwards's schizoaffective disorder is amenable to traditional mental health

13

treatment. When asked whether sexually violent predator treatment would include mental health treatment, Mauro testified "[i]t is my understanding that he would receive treatment for any sexual deviancy, but I do not know if he would receive any mental health treatments that were not on si[te]." Mauro stated that Edwards does not need treatment for sexual deviancy, and that Edwards is incapable of benefitting from such treatment because he is delusional. According to Mauro, Edwards's psychosis would disqualify him from treatment under Chapter 841.

Relevant evidence is any evidence that tends to make the existence of a fact of consequence more or less probable than it would be without the evidence. Tex. R. Evid. 401. The SVP statute provides that the issue for the jury to determine was whether Edwards is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to commit a predatory act of sexual violence.[2] Tex. Health & Safety Code Ann. § 841.003(a). The relevant inquiry is whether Edwards's behavioral abnormality makes him likely to commit a predatory act of sexual violence. *See id*. Therefore, the issue of whether Edwards would receive treatment for his schizoaffective disorder if placed under a "regular" mental health commitment was not relevant to the issue before the jury, and the trial court did not abuse its discretion by refusing to admit such evidence. *See*

_____

[2]The trial court granted the State a directed verdict with respect to Edwards's status as a repeat sexually violent offender.

*generally Auld*, 34 S.W.3d at 906; *Salazar*, 2008 WL 4998273, at *2. Furthermore, even if the trial court had erred by excluding the evidence, Edwards must show that the trial court's decision probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a). The jury heard evidence concerning Edwards's two prior sexual offenses, his diagnoses of schizoaffective disorder, antisocial personality traits, abuse of alcohol and cannabis, problems complying with the terms of his probation, as well as Edwards's scores on actuarial instruments. In light of the totality of the evidence before the jury, we conclude that Edwards has not demonstrated that the trial court's decision not to admit the disputed evidence probably caused the rendition of an improper judgment. *See id*. We overrule issue two.

## ISSUE THREE

In his third issue, Edwards contends the trial court should not have required him to testify at trial or by deposition because he is insane and, therefore, incompetent to testify. Edwards filed a pretrial motion, in which he requested that he not be required to testify at trial or by deposition due to his alleged insanity. The trial court overruled the motion and permitted the State to call Edwards as a witness. During his testimony, Edwards made several delusional statements. However, Edwards was also able to clearly and coherently testify concerning his

15

name, date of birth, current and past TDCJ numbers, and the details of his two sexual offenses.

Rule 601(a) of the Texas Rules of Evidence states as follows:

**(a) General Rule.** Every person is competent to be a witness except as otherwise provided in these rules. The following witnesses shall be incompetent to testify in any proceeding subject to these rules:
(1) . . . Insane persons who, in the opinion of the court, are in an insane condition of mind at the time when they are offered as a witness, or who, in the opinion of the court, were in that condition when the events happened of which they are called to testify.

Tex. R. Evid. 601(a)(1). The party attacking a witness's competency bears the burden of proving the witness's incompetency. *Handel v. Long Trusts*, 757 S.W.2d 848, 854 (Tex. App.—Texarkana 1988, no writ). Witness competency is a preliminary question for the trial court to determine, and we will not disturb the trial court's ruling on appeal unless an abuse of discretion is shown. Tex. R. Evid. 104(a); *Solis v. State*, 647 S.W.2d 95, 98 (Tex. App.—San Antonio 1983, no writ). The Texas Rules of Evidence are intended to promote the ascertainment of truth and just determinations in legal proceedings. Tex. R. Evid. 102. The issue of competency under Rule 601 pertains to whether a witness has the ability to perceive the relevant events, recollect the events, and adequately narrate his recollection. *Rodriguez v. State*, 772 S.W.2d 167, 170 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd) (applying former Texas Rule of Criminal Evidence 601). A

16

mental infirmity does not necessarily render a witness incompetent to testify. *See Rodriguez*, 772 S.W.2d. at 170 (The testimony of a witness with Alzheimer's disease raised "troubling questions," but the court concluded that her account of the crime was "lucid and purposeful.").

As previously discussed, although Edwards made some delusional statements during his testimony, he was able to testify clearly and coherently regarding his name, date of birth, current and past TDCJ numbers, and the details of his two sexual offenses. On this record, we cannot say that the trial court erred by determining that Edwards was competent to testify. *See* Tex. R. Evid. 601(a); *Rodriguez*, 772 S.W.2d. at 170. Furthermore, Edwards has not demonstrated that permitting the State to call Edwards as a witness probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1). For all of these reasons, we overrule issue three.

## ISSUE FOUR

In issue four, Edwards complains of the trial court's denial of his request to have an attorney present at the pre-trial expert examination. We have held that neither the SVP statute nor the Fourteenth Amendment requires that counsel be present during a psychiatrist's post-petition examination. *See In re Commitment of Smith*, 422 S.W.3d 802, 807 (Tex. App.—Beaumont 2014, pet. denied). Edwards

17

argues that our holding in *Smith* was based solely on a concession by Smith that the SVP statute does not appear to encompass a pre-trial psychiatric examination. *See id*. at 806. In *Smith*, we merely noted that Smith made this concession, and we did not use this concession to reach our holding. *See id*. at 804-07. Additionally, we have upheld our *Smith* ruling in other cases. *See In re Commitment of Speed*, No. 09-13-00488-CV, 2014 Tex. App. LEXIS 4444, at *2 (Tex. App.—Beaumont Apr. 24, 2014, pet. denied) (mem. op.); *see also In re Commitment of Lemmons*, No. 09-13-00346-CV, 2014 Tex. App. LEXIS 3888, at **1-2 (Tex. App.—Beaumont Apr. 10, 2014, pet. denied) (mem. op.). We decline to revisit our ruling in *Smith* and, for the reasons discussed in *Smith*, we overrule issue four. Having overruled each of Edwards's appellate issues, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on June 23, 2014
Opinion Delivered September 4, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.

18