# NO. 12-18-00101-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | *APPEAL FROM THE 7TH* |
| *THE COMMITMENT OF* | § | *JUDICIAL DISTRICT COURT* |
| *CORRIE WILLIAMS* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Corrie Williams appeals the trial court's judgment and order of civil commitment as a sexually violent predator. In three issues, Appellant challenges the trial court's determination that he was competent to testify and the legal and factual sufficiency of the evidence. We affirm.

## BACKGROUND

Appellant was convicted of two counts of sexual assault of a child and sentenced to imprisonment for twenty years. Before his sentence was complete, the State filed a civil petition to commit him as a sexually violent predator. At trial, a jury found that Appellant was a sexually violent predator. The trial court rendered a judgment and order of civil commitment. This appeal followed.

## COMPETENCY TO TESTIFY

In his first issue, Appellant argues that the trial court erred by overruling his objection to his own testimony because he was "insane" for purposes of Texas Rule of Evidence 601 and therefore incompetent to testify.

**Standard of Review and Applicable Law**

Rule 601, in pertinent part, provides the following:

(a) **In General.** Every person is competent to be a witness unless these rules provide otherwise. The following witnesses are incompetent:

(1) *Insane Persons.* A person who is now insane or was insane at the time of the events about which the person is called to testify

TEX. R. EVID. 601(a).  The party claiming a witness is incompetent because of insanity bears the burden of proving his insanity by a preponderance of the evidence.  ***Handel v. Long Trusts***, 757 S.W.2d 848, 854 (Tex. App.—Texarkana 1988, no writ).  A mental infirmity does not necessarily render a witness incompetent to testify. ***In re Commitment of Edwards***, 443 S.W.3d 520, 528 (Tex. App.—Beaumont 2014, pet. denied).  The relevant factors in determining whether a witness is competent to testify are his capacities to intelligently observe the events when they occurred, recall the events, and narrate the recollection.  ***Watson v. State***, 596 S.W.2d 867, 870 (Tex. Crim. App. [Panel Op.] 1980); ***Edwards***, 443 S.W.3d at 528.  The issue of a witness's competency is generally a question for the trial court, and its ruling will not be disturbed on appeal unless an abuse of discretion is shown. ***Solis v. State***, 647 S.W.2d 95, 98 (Tex. App.—San Antonio 1983, no pet.).

**Analysis**

The undisputed evidence in this case shows that Appellant suffers from schizophrenia. Before trial, Appellant filed a motion for protective order and motion to quash arguing that he was incompetent to testify at trial or deposition because he was unable to effectively narrate his recollection of past events.  The trial court denied the motion and Appellant was deposed.  At trial, Appellant objected again when he was called to testify.  The trial court overruled the objection and stated it reviewed the deposition and observed that Appellant was able to respond to questions appropriately.  However, the trial court acknowledged that the deposition was taken several months before and that Appellant's competency status might have changed. Thus, the trial court suggested that Appellant reurge his objection if his answers on the stand were less appropriate than they were at the deposition. Appellant reurged his objection during his testimony, and the trial court overruled the objection.

On appeal, Appellant argues that the trial court erroneously based its determination of his competency to testify on his deposition.  He contends that he might have been able to perceive, recall, and narrate the relevant events at the time of the deposition, but he was not able to do so at the time of trial. Appellant claims that on the day of trial, he was having a relatively bad day with many negative symptoms, such as lethargy, impoverished speech, and psychomotor retardation. He concludes that the evidence of his insanity is so overwhelming that the trial court abused its discretion to determine otherwise.  We disagree.

On the witness stand, Appellant expressed some delusional beliefs, denied some statements he made in his deposition, and often asked that questions be repeated, but his testimony shows that

2

he was able to recall and narrate events that he observed in the past. *See Watson*, 596 S.W.2d at 870; *Edwards*, 443 S.W.3d at 528. For example, he stated his age at the time he dropped out of school, the offenses for which he was on probation when he committed the sexual assaults, some details about the sexual assaults, and his age when he was diagnosed with schizophrenia. Based on our review of the record, we cannot conclude that the trial court abused its discretion by determining that Appellant was competent to testify. *See Edwards*, 443 S.W.3d at 528; *Solis*, 647 S.W.2d at 98. Accordingly, we overrule Appellant's first issue.

## EVIDENTIARY SUFFICIENCY

In Appellant's second and third issues, he argues that the evidence is legally and factually insufficient to support a finding beyond a reasonable doubt that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

### Standard of Review and Applicable Law

When the state files a petition in a trial court alleging that a person is a sexually violent predator, the trial court is required to conduct a trial on the matter. TEX. HEALTH & SAFETY CODE ANN. § 841.041(a), 841.061(a) (West 2017). A person is considered a "sexually violent predator" if he (1) is a repeat sexually violent offender, and (2) suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a) (West 2017). A "behavioral abnormality" is defined as a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person. *Id.* § 841.002(2) (West 2017). If a trial judge or jury determines after a trial that a person is a sexually violent predator, the judge must commit him for treatment and supervision. *Id.* § 841.081(a) (West 2017).

In reviewing the legal sufficiency of the evidence supporting an appellant's civil commitment as a sexually violent predator, we use the same legal sufficiency standard that we use in criminal cases. *In re Commitment of Stuteville*, 463 S.W.3d 543, 551 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). We assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the statutory elements required for commitment beyond a reasonable doubt. *Id.*

3

In reviewing the factual sufficiency of the evidence supporting an appellant's civil commitment as a sexually violent predator, we weigh all the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial. *Id.* We reverse only if we determine after weighing the evidence that the risk of injustice is too great to allow the verdict to stand. *Id.*

<u>Analysis</u>

At trial, Dr. Sheri Gaines, a psychiatrist, testified that she evaluated Appellant and opined that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. During the evaluation process, she reviewed victim statements, police records, prison records, depositions, and evaluations of other mental health professionals. Gaines also met with Appellant for a two-hour interview.

To form her opinion regarding Appellant's behavioral abnormality, Dr. Gaines testified that she relied on literature that identifies risk factors associated with recidivism. According to Gaines, one major risk factor is deviant sex. Gaines testified that Appellant has the deviant sex risk factor and that she diagnosed him with unspecified paraphilic disorder. She said that one indicator of Appellant's sexual deviance is that he has four convictions for sexual assault of a child. Furthermore, while in prison, he repeatedly exposed himself, masturbated toward female prison guards, and told mental health professionals that he hears voices that tell him to molest little girls. Appellant wrote a letter stating that he cannot control himself and that he needs to be in a controlled environment because the voices are bothersome and tell him to molest. He also wrote and filed in the trial court a letter stating the following: "I feel like I would rape somebody. If I get out at any age, that I might. I love having sex with young little girls. I can't control myself."

Another major risk factor associated with recidivism according to Dr. Gaines is antisocial personality disorder, which she described briefly as difficulty following rules and societal norms. She diagnosed Appellant with antisocial personality disorder. Dr. Gaines noted that Appellant has a history of lawbreaking as both a teenager and an adult. He was placed in juvenile detention for an assault involving a knife. In addition to his sex offenses, he has convictions for theft and unlawful carrying of a weapon. Appellant admitted to alcohol and marijuana use at ages 13, 14, and 15. He further admitted to committing multiple unsolved robberies. In prison, Appellant received disciplinaries for exposing himself and fighting other inmates.

4

Dr. Gaines further testified that she diagnosed Appellant with schizophrenia, which is not usually related to sexual deviance. In Appellant's case, however, Gaines opined that Appellant's nonconsensual, sexually deviant hallucinations indicate his schizophrenia, paraphilic disorder, and antisocial personality disorder "feed off of each other" in a negative way. She asserted that Appellant's schizophrenia "fuels his sexual deviance" and is "most definitely related" to his sex offenses. Although Appellant was taking a monthly injection for his schizophrenia symptoms, it did not entirely relieve them. Gaines noted that Appellant indicated he masturbated toward female guards because of voices he heard. He also talked about having "extra sperm" that told him to have sex with certain people. Appellant's prison mental health records indicated that he believed visions were telling him to molest children. Appellant's treating physician documented, "The voices are worsening. He's unable to control himself. This is highly disturbing."

Dr. Gaines testified that she observed several additional recidivism risk factors in Appellant's case. One was that he committed the sexual assaults while he was on community supervision for another offense. Another risk factor was the young ages of Appellant's victims, specifically fourteen and sixteen years old. Another was that one of his victims was a stranger, indicating that upon release Appellant's potential victim pool would be huge. Other risk factors were that Appellant spent long periods of time with the victims, performed multiple sex acts on them, and used force against them as they struggled. Gaines noted Appellant's first victim, Cindy,[1] reported that he choked her during the assault. Appellant raped his second victim, Susan, over a long period of time and injured her to the point that she was bruised, in pain, and unable to sit. Appellant told Gaines that he did not do anything to Cindy and had only consensual sex with Susan. According to Gaines, this lack of insight or understanding of his offenses and lack of remorse constitute additional risk factors. A final risk factor was that Appellant had not received sex offender treatment.

When the State called Appellant as a witness, he testified about numerous topics, including his antisocial behaviors. He said that despite having a good family, he tended to get in trouble as a child. In middle school, Appellant often got into fights. In the seventh grade, he was suspended from school and placed on juvenile community supervision for brandishing a knife at someone. Although he did not stab the person, he stated that he wanted to. Appellant said that he dropped out of school in the eleventh grade. Eventually, he was placed on community supervision for unlawful carrying of a weapon, unauthorized use of a motor vehicle, and theft. His community supervision

---

[1] We use pseudonyms in this opinion to protect the privacy of the alleged victims.

was revoked when he was convicted of the sexual assaults. Appellant admitted that he sold drugs and committed two armed robberies although he was never convicted of those offenses. He stated that he received multiple disciplinaries in prison for fighting and assaulting officers.

Appellant also testified about his interactions with Cindy and Susan. Regarding his interaction with Cindy, Appellant testified that he met her through a mutual friend when she was fourteen years old and he was eighteen years old. The three of them attended a baseball game that day. After the game, Appellant took the friend home and then pulled the car over and told Cindy that he wanted to "get with her," meaning he wanted to have sex with her. He pulled down Cindy's pants, took his penis out of his pants, and put his finger in Cindy's vagina. Appellant denied any use of force or any other sexual activity. Regarding his interaction with Susan, Appellant testified that she was sixteen and he was nineteen when he knew her. One day, Susan called Appellant and asked for a ride to school. Appellant agreed to take Susan to school but instead took her to a vacant house. Appellant stated that he had vaginal intercourse with Susan but did not use force and had no other sexual activity with her. Appellant testified that he did not believe he did anything wrong to either girl and felt no remorse or guilt for his actions. He did not think that he needed sex offender treatment or psychiatric treatment.

Appellant testified that he was diagnosed with schizophrenia at age thirty-one. He said he believes that spirits cause his body to move and do specific acts, including sexual intercourse. Appellant also believes in a phenomenon called a "walk-through," which he described as follows:

> [A walk-through is] extra sperm or whatever come out of your penis into a woman's vagina and get them pregnant. Be extra sperm and they be extra kids. Be personalities and people. They be man to man to man and can't move or talk. Just like everything else on the skin.

He further stated that the "extra sperm" move and talk to people when he is having sexual intercourse. When asked whether the sperm tell him who to have sex with, he replied, "No, not really." Appellant further testified that satellites talk to him. They have threatened to cut him up and told him to molest children and masturbate on people. Appellant also believes that the satellites put shanks and razors in his penis.

Dr. Marisa Mauro, a forensic psychologist, was called to testify on Appellant's behalf. She testified that she evaluated Appellant and opined that he does not have a behavioral abnormality. In

6

making this determination, Mauro reviewed Appellant's police records, court records, and prison records. She also interviewed Appellant twice, completed two actuarial instruments for recidivism risk assessment, and completed an instrument designed to measure psychopathy.

To measure Appellant's psychopathy, Dr. Mauro completed the Hare PCL-R. Appellant's total score on the PCL-R was 24, which is within a range designated as "mixed psychopathic features." Scores above 29 are designated as "psychopathic," while scores below 20 are designated as "not psychopathic." Mauro testified that in her opinion, Appellant does not have psychopathy, and therefore she did not consider psychopathy as a factor in her determination of whether Appellant has a behavioral abnormality.

To assess Appellant's risk of recidivism, Mauro completed the Static-99R and the Static-2002R. Appellant's score was 5 on each instrument. On the Static-99R, a typical sex offender has a score of 2. A score of 5 is associated with a relative risk of 2.70, which means a person with that score is 2.70 times more likely to commit a sex offense than a typical sex offender. People with scores of 5 have been found to be arrested for or convicted of new sex offenses 15.2 percent of the time over a five-year period.

In addition to Appellant's scores on the PCL-R and the Statics, Dr. Mauro testified that she considered whether he has antisocial personality disorder or a paraphilia and whether substance use was a factor in his offenses in determining his risk of recidivism. She opined that none of these factors were relevant and that the absence of these factors lowers Appellant's risk of recidivism compared to other sex offenders. Additionally, Mauro noted that Appellant had family support in the past and opined that such support upon his release would reduce his risk of recidivism.

Like other mental health professionals who evaluated Appellant, Dr. Mauro diagnosed him with schizophrenia. She testified that his mental illness was apparent to her very early in the first interview. Appellant made up words, used words oddly, and exhibited garbled speech. He also talked about some unusual beliefs, including his belief in the "walk-through." Mauro understood the term "walk-through" to mean that Appellant's father's sperm covered him when he was conceived and that they continue to cover his body and tell him what to do.

On appeal, in support of his argument that the evidence is legally and factually insufficient, Appellant cites the following legislative findings:

> The legislature finds that a small but extremely dangerous group of sexually violent predators exists
> and that those predators have a behavioral abnormality that is not amenable to traditional mental illness

treatment modalities[.]

TEX. HEALTH & SAFETY CODE ANN. § 841.001 (West 2017). Appellant argues that the evidence in this case is insufficient because his schizophrenia is treatable under traditional mental health treatment modalities and there is no evidence that he would have a behavioral abnormality absent his schizophrenia. We disagree.

Despite the legislative findings cited above, the legislature did not make lack of treatability under traditional mental illness modalities an element required for commitment as a sexually violent predator. *See id.* §§ 841.002(2), 841.003(a), 841.081(a); *see also In re Commitment of Williams*, 539 S.W.3d 429, 439 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Therefore, the State was not required to present evidence that Appellant's mental health issues are not amenable to traditional treatment modalities. *See Williams*, 539 S.W.3d at 439. After assessing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could find the statutory elements required for commitment beyond a reasonable doubt. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.002(2), 841.003(a); *Stuteville*, 463 S.W.3d at 551. We further conclude, after weighing all the evidence, that the risk of injustice is not too great to allow the verdict to stand. *See Stuteville*, 463 S.W.3d at 551. Accordingly, the evidence is legally and factually sufficient to support the verdict. We overrule Appellant's second and third issues.

## DISPOSITION

Having overruled Appellant's first, second, and third issues, we ***affirm*** the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered February 28, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 28, 2019**

**NO. 12-18-00101-CV**

**CORRIE WILLIAMS,**
Appellant

V.

**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 7th Judicial District Court
of Smith County, Texas. (Tr.Ct.No. 17-0905-A)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*